**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | No. 4:17CR00145 BSM |
| ) | |
| **EDGAR K. RIDDICK** ) | |

**MOTION TO SUPPRESS EVIDENCE**
**FROM SEARCH OF RESIDENCE FOR OVERBREADTH**

The defendant, Edgar K. Riddick, through his attorneys, J. Blake Hendrix and Annie Depper of Fuqua Campbell, P.A., moves this Court to suppress the results of a search of his desktop Seagate hard drive.

I.   INTRODUCTION AND FACTS

Riddick moves to suppress evidence seized from the Seagate hard drive seized from his home on February 23, 2017. He asserts that the warrant, affidavit, and resulting search of the computer were overbroad.

On February 22, 2017, Detective Amber Kalmer of the Little Rock Police Department applied to Little Rock District Court Judge Alice Lightle for a warrant to search Riddick's residence. To establish probable cause for the warrant, Kalmer alleged that on May 30, 2016, Chatstep, a chatroom conferencing platform, reported to the National Center for Missing and Exploited Children ("NCMEC") that an individual using the screenname Missy, Room: Nuderoom, with an IP address 71.238.241.25 uploaded an image of suspected child pornography on May 30, 2016, at 4:17:54 UTC (Coordinated Universal Time). The NCMEC report was forwarded to the Little Rock Police Department, and a detective later viewed the image, concluding it met the definition of child pornography.

On December 23, 2016, Kalmer's affidavit continued, Chatstep report to NCMEC that the account for a user named Mom45, Room: Nude, Port 49823 using IP address 2601:381:8105:1e30:864:e60c:13ed:ea05 uploaded an image of suspected child pornography on December 23, 2016, at 6:55:40 UTC. The NCMEC report was referred to the Little Rock Police Department; a detective later viewed the image and concluded it met the definition of child pornography.

On January 2, 2017, the affidavit continued, Chatstep reported to NCMEC that the account for a user named ccc, Room: office, Port 50094, using IP address 2601:381:8105:1e30:8438:8cd8:e193:5499 uploaded an image of suspected child pornography on January 2, 2017, at 19:53:37 UTC. The NCMEC report was referred to the Little Rock Police Department, and a detective later viewed the image, concluding it met the definition of child pornography.

NCMEC received another referral from Chatstep, according to the affidavit, on January 4, 2017, reporting that an individual using the screenname "Missy" entered room "momsonx", port 51420, using the IP address 2601:381:8105:1e30:459f:6048:d5f8 and uploaded one image of suspected child pornography on January 4, 2016, at 14:58:58 UTC. The NCMEC report was referred to the Little Rock Police Department where a detective later viewed the image and concluded it met the definition of child pornography.

Kalmer's affidavit further stated that on February 14, 2017, Kalmer applied for and obtained a search warrant for the Chatstep account for screen/user name: Mom45 Room: Nude Port: 49823 and IP address: 2601:381:8105:1e30:864:e60c:13ed:ea05 used on December 23, 2016. The affidavit claimed that Chatstep responded with information relating to three other IP addresses: 1) 2601:381:8105:1e30:864:e60c:13ed:ea05; 2) 2601:381:8105:1e30:459f:6048:d5f8;

and 3) 2601:381:8105:1e30:8438:8cd8:e193:5499. Kalmer culled from this data that IP address 2601:381:8105:1e30:8438:8cd8:e193:5499 was used to enter a room in Chatstep named "pedos"; that IP address 2601:381:8105:1e30:459f:6048:d5f8 was used to enter rooms called "dropbox/pedo" and "1cnccnessst"; and, that IP address 71.238.241.25 was used to enter rooms called "daddau," "momsonlove..", "momboylove", and "incest".

The probable cause section of the affidavit concluded by setting out the further investigation revealing that Riddick was the subscriber to all of the IP addresses at his home in Little Rock. The affidavit sought authority to search Riddick's home for all electronic devices and to search the entire contents of any seized devices for evidence of the distribution, possession, or viewing of child pornography.

Judge Lightle issued the search warrant on February 22, 2017. It authorized the search of Riddick's residence for all digital devices and a search of their full contents, as Kalmer requested. The warrant was executed on February 23, 2017, and several digital devices were seized from Riddick's home. A later forensic analysis of one of the devices – the Seagate hard drive – revealed over a thousand images of suspected child pornography.

## II.   OVERBREADTH

The Fourth Amendment prohibits General Warrants. "The problem posed by the general warrant is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. at 480. The Fourth Amendment, the Court explained in *Andresen*,

> addresses the problem by requiring a particular description of the thing to be seized. This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Id*. (internal quotations and citations omitted).

A. Detective Kalmer's affidavit for the search warrant sought, and the warrant authorized, an unlimited and unconstrained search of all electronic equipment the police seized from Riddick's residence. But an unconstrained general rummaging through a person's computer is the same as a general rummaging through their home; the Constitution forbids it. A warrant is now required that specifies the particular areas or sectors of a computer to be searched and the particular items to be seized from it. *Riley v. California*, ___ U.S. ___, 134 S.Ct. 2473 (2014), laid this foundation. The Court explained that digital devices are both qualitatively and quantitatively different from traditional items subject to search and seizure, and "[o]ne of the most notable distinguishing features of modern [digital devices] is their immense storage capacity." *Id*. at 2489. "The sum of an individual's private life," Chief Justice Roberts explained, "can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions …" contained on a digital device. *Id.* Computers have little in common with the types of containers at issue in other search cases. Comparing a cell phone or computer to an ordinary container, the Court said, "is like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together." *Id.* at 2489. See *United States v. Jae Shik Kim*, 103 F. Supp. 3d 32, 55 (D.D.C. 2015) (the *Riley* opinion "strongly indicate[d] that a digital data storage device cannot fairly be compared to an ordinary container when evaluating the privacy concerns involved").

Since *Riley*, the particularity requirement of the Fourth Amendment is now clear: the "place" to be searched is the computer equipment and the "thing" to be seized is the digital data contained in the computer. See *State v. Mansor*, 279 Ore. App. 778, 801, 381 P.3d 930 (2016) (for purposes of the particularity requirement, "personal electronic devices are more akin to the 'place' to be searched than to the 'thing' to be seized and examined"). After *Riley*, the key principal in the

4

search of electronic devices is that the police are not allowed to search all areas contained within a computer for evidence of a crime.

*In re Search of a Nextel Cellular Tel.*, 2014 U.S. Dist. LEXIS 88215 (D. Kan. 2014), involved an application to search the contents of a suspect's cell phone for evidence of drug trafficking. The court refused to issue the warrant finding that the affidavit failed to particularly describe the things the officers wanted to seize. Searching the entire phone, the court said,

> is akin to saying that the government will search a residence by looking in all the rooms of the house and opening any desk drawers and cabinets to see what's inside, even though the government is looking for a stolen lawnmower. Put another way, just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe drug trafficking communications may be found in a phone's mail application will not support the search of the phone's Angry Birds application.

To avoid a general exploratory search, limitations must exist "to maintain the privacy of materials that are intermingled with seizable materials, and to avoid turning a limited search for particular information into a general search . . ." *In re Cellular Tels.*, 2014 U.S. Dist. LEXIS 182165 (D. Kan. 2014). The best way to avoid a general search of a digital device is for the affidavit to set out facts particularly describing the specific areas of the device to be searched. See *In re Application for Search Warrant*, 2012 Vt. 102 (particularity may be achieved through specification of how a search will be conducted. By limiting the authorization to specific areas and specific things, the particularity requirement ensures that the search will be carefully tailored to its justifications and will not become a wide-ranging, exploratory search that the Fourth Amendment prohibits).

*In re Cellular Tels.*, 2014 U.S. Dist. LEXIS 182165 (D. Kan. 2014), is the classic case setting out the constitutional limitations of a search of digital devices after *Riley*. The Fourth Amendment's particularity requirement, the court began, "ensure[s] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging

exploratory searches the Framers intended to prohibit." Stated another way, "[T]he manifest purpose of the Fourth Amendment particularity requirement is to prevent the Framers' chief evil: general searches." *Id*. at 6-7. To prevent a general exploratory search of a computer hard drive, the court explained, the warrant and affidavit must identify a particular region of the device believed to contain the sought after contraband. "Limitations must exist 'to maintain the privacy of material that are intermingled with seizable material, and to avoid turning a limited search for particular information into a general search of office file systems and computer databases." *Id*. at 31-32. To avoid an overly broad search, the court issuing the warrant must "ensure that [the officer] is only searching sectors or blocks of the drives that are most likely to contain the data for which there is probable cause . . ." *Id*. at 32. The Warrant Clause limits the scope of the search of an electronic device to those places where the contraband can be found.

  B. The Kalmer affidavit sought permission to search, among other things, computers, related equipment, and

> [a]ny and all electronic devices which are capable of analyzing, creating, displaying, converting, storing, or transmitting electronic or magnetic computer impulses or data. These devices include but are not limited to: computers and computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotter, encryption circuit boards, optical scanners, fixed hard disks, external hard drives, removable hard disk cartridges, CD-ROM drives, and other computer-related electronic devices and connection equipment, floppy diskettes, tapes, laser disks, video cassettes, and other media which are capable of storing magnetic coding; any and all instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer or related components, along with operating systems, application software, utility programs, compilers, interpreters, and other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission; any and all written or printed material which provides instructions or examples concerning the operations of a computer system, computer software, and/or any related device.

Kalmer requested authority to seize or copy "entire computers or storage media." The affidavit explained that "imaging is the taking of a *complete electronic picture* of the computer's data,

6

including all hidden sectors and deleted files." Kalmer sought to scan the entirety of the electronic devices.

> [T]he warrant I am applying for would permit the examination of the electronic devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the *entire medium*, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

The search warrant did not limit the scope of the officers' search. It directed the police to search electronic devices, and authorized them "to image, that is, create a bit-by-bit copy of the computer hard disks." The warrant allowed the police to rummage through the entire contents of any electronic device located in Riddick's home. In executing the warrant, the officers did just that. Following seizure of the Seagate hard drive, it was turned over to the Federal Bureau of Investigation. Tim Whitlock, a special agent with the FBI, created a bit-by-bit copy of the hard drive and performed a search of the hard drive. There were no limitations put on Whitlock's search of the hard drive, and he exercised no restraint. The warrant did not limit his search to specific areas of the computer that could contain child pornography, and he conducted a general exploratory search of the entire contents of Riddick's computer. No effort was made to protect "against the danger that the process of identifying seizable electronic evidence would become a vehicle for the government to gain access to a larger pool of data that it has no probable cause to collect." *In re Cellular Tels.*, supra at 30-31.

The Supreme Court in *Riley* recognized that computers contain vast amounts of private information that are off limits to discovery by law enforcement unless the search is supported by a warrant that particularly describes the places and things to be searched. A general rummaging through the entire contents of a computer hard drive violates this principle. Here, the affidavit asked for a general rummaging through Riddick's electronic devices. The warrant permitted a

7

general exploratory search of the computer, and it allowed Kalmer and Whitlock to execute a general warrant. The results should be suppressed.

### III.   CONCLUSION

The February 22, 2017 warrant was overbroad and, therefore, violated the Fourth Amendment. It failed to specifically describe the areas of the electronic devices that could be searched. Absent any such limitation, the search conducted by Kalmer and Whitlock was a general rummaging. All evidence recovered from the Seagate hard drive should be suppressed.

Respectfully submitted by,

/s/ J. Blake Hendrix _____
J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

and

/s/ Annie Depper_____
Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2018, this document was filed with the Court's electronic filing system, which shall send electronic notification of this filing to all counsel of record.

/s/ J. Blake Hendrix
J. Blake Hendrix