**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **V.** | **)** | **No. 4:17CR00145 BSM** |
| | **)** | |
| **EDGAR K. RIDDICK** | **)** | |

**MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF RESIDENCE AND REQUEST FOR VOLUNTARINESS HEARING**

The Little Rock Police Department received information from Chatstep, a chatroom conferencing platform, that it unlawfully seized. Much of that illegally seized information was presented in an affidavit to support probable cause for a warrant to search Riddick's home. Through his attorneys, J. Blake Hendrix and Annie Depper of Fuqua Campbell, P.A., Riddick moves to suppress all evidence and statements obtained as a result of an unlawful search of his home.

**I.**

**A.**

On February 22, 2017, Detective Amber Kalmer of the Little Rock Police Department applied to Little Rock District Court Judge Alice Lightle for a warrant to search Riddick's residence. To establish probable cause for the warrant, Kalmer alleged that on May 30, 2016, Chatstep reported to the National Center for Missing and Exploited Children ("NCMEC") that an individual using the screenname Missy, Room: Nuderoom, with an IP address 71.238.241.25 uploaded an image of suspected child pornography on May 30, 2016, at 4:17:54 UTC (Coordinated Universal Time). The NCMEC report was forwarded to the Little Rock Police Department, and a detective later viewed the image, concluding it met the definition of child pornography.

On December 23, 2016, Kalmer's affidavit continued, Chatstep report to NCMEC that the account for a user named Mom45, Room: Nude, Port 49823 using IP address 2601:381:8105:1e30:864:e60c:13ed:ea05 uploaded an image of suspected child pornography on December 23, 2016, at 6:55:40 UTC. The NCMEC report was referred to the Little Rock Police Department; a detective later viewed the image and concluded it met the definition of child pornography.

On January 2, 2017, the affidavit continued, Chatstep reported to NCMEC that the account for a user named ccc, Room: office, Port 50094, using IP address 2601:381:8105:1e30:8438:8cd8:e193:5499 uploaded an image of suspected child pornography on January 2, 2017, at 19:53:37 UTC. The NCMEC report was referred to the Little Rock Police Department, and a detective later viewed the image, concluding it met the definition of child pornography.

NCMEC received another referral from Chatstep on January 4, 2017, reporting that an individual using the screenname "Missy" entered room "momsonx", port 51420, using the IP address 2601:381:8105:1e30:459f:6048:d5f8 and uploaded one image of suspected child pornography on January 4, 2016, at 14:58:58 UTC. The NCMEC report was referred to the Little Rock Police Department where a detective later viewed the image and concluded it met the definition of child pornography.

Kalmer's affidavit further stated that on February 14, 2017, Kalmer applied for and obtained a search warrant for the Chatstep account for screen/user name: Mom45 Room: Nude Port: 49823 and IP address: 2601:381:8105:1e30:864:e60c:13ed:ea05 used on December 23, 2016. The affidavit claimed that Chatstep responded with information relating to three other IP addresses: 1) 2601:381:8105:1e30:864:e60c:13ed:ea05; 2) 2601:381:8105:1e30:459f:6048:d5f8;

and 3) 2601:381:8105:1e30:8438:8cd8:e193:5499. Kalmer culled from this data that IP address 2601:381:8105:1e30:8438:8cd8:e193:5499 was used to enter a room in Chatstep named "pedos"; that IP address 2601:381:8105:1e30:459f:6048:d5f8 was used to enter rooms called "dropbox/pedo" and "1cnccnessst"; and, that IP address 71.238.241.25 was used to enter rooms called "daddau," "momsonlove..", "momboylove", and "incest".

The probable cause section of the affidavit concluded by setting out the further investigation revealing that Riddick was the subscriber to all of the IP addresses at his home in Little Rock. The affidavit sought authority to search Riddick's home for all electronic devices and to search the entire contents of any seized devices for evidence of the distribution, possession, or viewing of child pornography.

Judge Lightle issued the search warrant on February 22, 2017. It authorized the search of Riddick's residence for all digital devices and a search of their full contents, as Kalmer requested. The warrant was executed on February 23, 2017, and several digital devices were seized from Riddick's home. A later forensic analysis of one of the devices – the hard drive of a desk top computer – revealed over a thousand images of suspected child pornography.

While the search warrant was executed, Kalmer and Detective Jennifer Hurd took a *Mirandized* statement from Riddick. He denied knowingly possessing or viewing child pornography, but he admitted he was familiar with, and used, Chatstep.

A grand jury of this district returned an indictment against Riddick on June 6, 2017, charging him with one count of possessing child pornography on February 23, 2017, a violation of 18 U.S.C. §2252(a)(4)(B), and three counts of distributing child pornography -- on May 30, 2016 (Count 2), January 4, 2017 (Count 3), and February 2, 2017 (Count 4), violations of 18 U.S.C. §2252(a)(2).

**II.**

**A.**

We filed a *Motion to Suppress Evidence from Chatstep That Exceeded the Scope of the Warrant* alleging that all of the data seized from Chatstep, with the exception of one entry, was seized in violation of the Fourth Amendment. The motion asserts that on February 14, 2017, Kalmer applied for and obtained a warrant from Judge Lightle and that the warrant authorized the seizure of data relating to the Chatstep account "for screen/user name: Mom45 Room Nude Port: 49823 and IP address: 2601:381:8105:1e30:864:e60c:13ed:ea05[.]" We argued, and maintain here, that the warrant only authorized the seizure of data relating to that account. Kalmer, however, seized volumes of records that the warrant did not authorize her to seize. Account information for other screen/user names was seized along with records relating to other IP addresses not mentioned in the affidavit or the warrant. We, therefore, concluded that the seizure of all records other than those pertaining to Mom45 Room Nude Port: 49823 and IP address: 2601:381:8105:1e30:864:e60c:13ed:ea05 was beyond the scope of the warrant and their seizure was unlawful.

**B.**

Evidence obtained from the execution of a search warrant based on an affidavit that contains illegally obtained information should be suppressed if the tainted information affected the judge's decision to issue the warrant. *Murray v. United States*, 487 U.S. 533 (1988). In *Murray*, police forced entry without a warrant in to a warehouse and saw bales of marijuana in plain view. The officers left and obtained a warrant to search the warehouse. The warrant application did not contain any information about the warrantless entry or the officers plain view observations. The

issue before the Supreme Court was whether the warrant was based on a source of information independent of the illegal entry.

The Court explained the independent source doctrine this way: "where an unlawful entry has given investigators knowledge of facts *x* and *y*, but fact *z* has been learned by other means, fact *z* can be said to be admissible because derived from an 'independent source.'" *Id*. at 538. The issue, the Court found, was whether the subsequent warrant was based on evidence independent of the unlawful entry. If the warrant application contained information derived from the Fourth Amendment violation and affected the magistrate's decision to issue the warrant, the independent source doctrine, the Court found, should not apply and the evidence obtained pursuant to the warrant should be suppressed. *Id.* at 542. See *Segura v. United States*, 468 U.S. 796 (1984) (since none of the information on which the warrant was based was derived from a prior Fourth Amendment violation, the warrant was the product of an independent source and the evidence obtained from the execution of the search should not be suppressed). Cf. *United States v. Madrid*, 152 F.3d 103 (8th Cir. 1998) (reversing refusal to order suppression of evidence obtained from the execution of a search warrant where warrant application included information from a prior Fourth Amendment violation).

The process for determining whether to suppress evidence obtained pursuant to a warrant based in part on information illegally seized has not been conclusively decided. In *United States v. Madrid*, 152 F.3d at 1039, the district court applied a *Franks v. Delaware*, 438 U.S. 154 (1978), process, excising the information in the warrant application that was illegally seized and reassessing the application to determine whether probable cause remained to issue the warrant. The Eighth Circuit expressed concern whether this was the correct process; the Supreme Court, after all, stated in *Murray* that a search warrant that contained information from a prior illegal

search could not be an independent source if the information from the first search was "presented to the Magistrate and affected his decision to issue the warrant." *Murray*, 487 U.S. at 542. Nevertheless, the Eighth Circuit in *Madrid* assumed for the purposes of that case that a *Franks*-process was appropriate. Other circuits to address the issue favor a *Franks*-based approach. See *United States v. Dessesaure*, 429 F.3d 359 (1st Cir. 2005); *United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005) (compiling cases).

**III.**

**A.**

We believe that the results of the execution of the search warrant on Riddick's home, the subsequent search of the computers, and his statement, should be suppressed under either analysis. When the illegally obtained information is excised, no probable cause remains; if the information remains, the amount of the illegally obtained information clearly affected Judge Lightle's decision to issue the warrant.

We recognize that the determination of this motion will be based on this Court's determination of our *Motion to Suppress Evidence from Chatstep That Exceeded the Scope of the Warrant*. That motion is based on the principle that officers may only seize the evidence that the warrant authorizes (unless a valid exception to the warrant requirement exists). Our position is that the warrant only authorized the seizure of information related to a Chatstep account pertaining to Mom45 Room Nude Port: 49823 and IP address: 2601:381:8105:1e30:864:e60c:13ed:ea05 on December 23, 2016. That information is contained in paragraphs 3 and 4 of Kalmer's affidavit for the warrant to search Riddick's home.

The officers, however, seized a volume of other information not included in the warrant (or the warrant application). The seizure of that information exceeded the scope of the Chatstep warrant and cannot be redeemed by any exception to the warrant requirement.

This unlawfully seized information related to the seizure of information regarding three IP addresses – 1) 71.238.241.25; 2) 2601:381:8105:1e30:459f:6048:d5f8; and 3) 2601:381:8105:1e30:8438:8cd8:e193:5499. This unlawfully seized information is contained in paragraphs 1 and 2, 5 thru 8, and 10 thru 13 of the probable cause section of the warrant application for the search of Riddick's home. Paragraphs 1 and 2 detail information regarding IP address 71.238.241.25 and allege that it was used to upload an image of child pornography on May 30, 2016. Paragraphs 5 and 6 detail information regarding IP address 2601:381:8105:1e30:8438:8cd8:e193:5499 and allege it was used to upload an image of child pornography on January 2, 2017. Paragraphs 7 and 8 detail information regarding IP address 2601:381:8105:1e30:459f:6048:d5f8 and allege it was used to upload an image of child pornography on January 4, 2017. Paragraph 10 details the officers review of the information about the three IP addresses, and paragraphs 11 thru 13 detail how those IP addresses were used (at unspecified times) to enter into suspicious sounding rooms like "pedos" and "momboylove".

If these paragraphs are excised from the probable cause mix, the only allegation to support probable cause is contained in paragraphs 3 and 4 and paragraph 15. Those paragraphs state that Chatstep reported to NCMEC that a user named Mom45 uploaded an image of child pornography into a chat room on December 23, 2016, using the IP address ending in ea05 and that Riddick was the subscriber of the IP address.

**B.**

After excising the information in the warrant application that we contend was illegally seized, the remaining information was stale and failed to establish probable cause. See *Grubbs v. United States*, 547 U.S. 90, fn. 2 (2006) (probable cause may cease to exist if the probable cause showing has grown stale in view of the time that has passed).

*United States v. Raymonda*, 780 F.3d 105 (2nd Cir. 2015), addressed staleness in child pornography investigations. Law enforcement learned that someone with a particular IP address accessed 76 images of child pornography all on the same day. The IP address came back to Raymonda. Nine months later, an officer applied for a warrant to search Raymonda's property. The affidavit recited that an IP address associated with Raymonda accessed the 76 images on a day nine months earlier. It also contained an assertion that people who like child pornography often hoard their bounty, keeping it around so they can view it over and over. The warrant issued, and over 1000 images of child pornography were found on the electronic devices in Raymonda's home.

Raymonda filed a motion to suppress claiming that the information in the affidavit was too stale to establish probable cause to search his home and computers. The prosecution claimed that it was likely child pornography was still on Raymonda's computers because child pornographers hoard their pictures. The issue, the court debated, was whether a warrant application "establishes a pattern of continuing criminal activity, such that there is reason to believe that the cited activity was probably not a one-time occurrence . . ." *Id.*

Several factors inform this decision. Did the suspect admit he was a pedophile? *Id*. at 114. Did the suspect pay to view child pornography, that is, did he subscribe to a pay-website associated with child pornography? *Id.* Did the suspect have a history of viewing child pornography? *Id*. at

115. If there is evidence of only a one-time occurrence, did the suspect intend to continue to deal in child pornography? *Id*. Analyzing these factors, the *Raymonda* Court stated,

> [A]bsent any indicia that the suspect was collector of child pornography likely to hoard pornographic files, we hold that a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary traces of that incident have likely cleared. We thus conclude that the warrant issued in this case was not supported by probable cause.

*Id*. at 117.

*United States v. Zimmerman*, 277 F.3d 426 (3rd Cir. 2002), is also instructional. Zimmerman was a high school teacher who came under the suspicion of having sexually abused a number of male students. The affidavit to support a search warrant for Zimmerman's home set out numerous allegations of sexual abuse and included an allegation that Zimmerman showed a pornographic video to one of the students six months before. The affidavit also contained the opinion of a law enforcement officer that people who possess child pornography keep it in their homes for extended periods of time. But this, the court found, was not enough to support a finding of probable cause. The six-month delay, the court held, was too long; the information had grown too stale to believe child pornography would be found in Zimmerman's home. The affidavit only alleged that Zimmerman possessed one piece of pornography six months earlier and there was no indication that Zimmerman continuously acquired or planned to acquire more pornography. *Id.* at 434.

**C.**

If the illegally obtained information is excised from the Kalmer warrant application, the remaining information dates back to a single occurrence on December 23, 2016. This remaining information, we contend, was too stale to support the conclusion that probable cause existed sixty-two days later to search Riddick's home and computers for child pornography.

The first *Raymonda* factor is whether the suspect admitted he was a pedophile. Riddick gave a lengthy statement to Kalmer and Hurd that lasted over two hours. Riddick denied having an interest in child pornography or knowingly viewing or possessing child pornography. In short, he did not admit he was a pedophile. This factors weighs in favor of finding that the information that remains in the warrant application was stale.

The second factor -- did the suspect pay to view child pornography -- also weighs in Riddick's favor. Riddick admitted he used Chatstep. That platform, however, is not a pay-for child pornography website. It is a messaging platform that contains chat rooms for a broad spectrum of interests -- from sports rooms, to adult-themed rooms, to religious-themed rooms. The second *Raymonda* factors favors a finding of staleness.

Did the suspect, according to the third factor, have a history of viewing child pornography? The information that remains in Kalmer's warrant application after the illegally obtained information is excised established only that someone using an IP address associated with Riddick uploaded a single image of child pornography once -- on December 23, 2016. A single incident does not prove a history.

The fourth *Raymonda* factor deals with the suspect's intent -- did he intend to continue to deal in child pornography to a degree that it would be fairly probable he continued this activity by the time the warrant was executed. The sole remaining allegation in the warrant application alleged that someone used an IP address assigned to Riddick to upload a single image. This fact, alone, does not establish one's intent to deal further in child pornography.

Assuming that the single remaining allegation established probable cause at some point in time, the probable cause had dissipated by the time the warrant issued. Sixty-two days elapsed from December 23, 2016, to February 23, 2017, when the warrant was executed. Any probable

cause to believe child pornography would be found in Riddick's home or in his computer had grown stale by then.

D.

In contrast to a *Franks*-based analysis, *Murray* suggests that the proper inquiry is whether the illegally obtained information in the warrant application 'affected [the magistrate's] decision to issue the warrant." *Murray*, 487 U.S. at 542. This line of reasoning also requires the suppression of all evidence obtained pursuant to, or as a result of, the February 22, 2017 warrant.

Kalmer's affidavit contained multiple allegations that were based on information we argue was illegally obtained. It indicated to the court that three other IP addresses, all registered to Riddick's home, uploaded child pornography to Chatstep chatrooms on three separate occasions spanning a period of time of almost one year. The affidavit also informed the court that these IP addresses entered suspicious sounding chatrooms like "pedos" and "momboylove". It can safely be assumed that these additional allegations affected Judge Lightle's decision to issue the warrant. She may not have issued a warrant based on one allegation involving a single image that occurred over two months before. These additional allegations, based on illegally seized information, surely had a profound affect on her decision to issue the warrant – they communicate to the court that the individual whose home is the subject of the search has uploaded child pornography on multiple occasions over an extended period of time, and that that individual is involved in chatrooms that appear to be related to child pornography.

E.

Whether this court uses a *Franks*-based analysis or considers whether the other allegations affected Judge Lightle's decision, the information in Kalmer's affidavit did not come from an

independent source. All of the evidence seized pursuant to the warrant based on illegally obtained information should be suppressed.

That evidence includes the actual physical evidence seized from Riddick's home – the computers and other digital devices -- and the evidence obtained following a search of the computer hard drives.

Riddick's statement, taken during the search, is also a result of the illegally seized information found in the affidavit and must be suppressed. In *Brown v. Illinois*, 422 U.S. 590 (1975), officers illegally entered Brown's home and arrested him without probable cause or a warrant. Brown was taken to the police station where officers advised him of the *Miranda* warnings and Brown gave an inculpatory statement. Approximately two hours separated Brown's illegal arrest and his statement. Several hours later, Brown was again advised of the *Miranda* warnings and gave another statement. After his conviction, Brown appealed to the Illinois Supreme Court, which concluded that the giving of the *Miranda* warnings broke the causal connection between the illegal arrest and the giving of the statements and that, therefore, the statements were an act of free will sufficient to purge the primary taint of the unlawful arrest.

The Supreme Court disagreed. "*Miranda* warning, *alone* and *per se*," the Court found, "cannot always make the act sufficiently a product of free will to break . . . the causal connection between the illegality and the confession." *Id*. at 603. The *Miranda* warnings, the Court explained, are surely an important factor to be considered, but not the only factor. "The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant." *Id*. at 604. Less than two hours separated Brown's illegal arrest from his confession, and the *Miranda* warnings were the only intervening circumstance. Brown's confession, the Court held, should have been suppressed. See

also *United States v. Yorgensen*, 845 F.3d 908 (8th Cir. 2017) (factors include the temporal proximity of the unconstitutional conduct and the statement, the presence of intervening circumstances, and the flagrancy of the violation).

Riddick was interrogated *during* the constitutional violation. As other armed officers searched Riddick's home, Kalmer and Hurd questioned him for over two hours. The violation and the statement were contemporaneous, and nothing interceded to separate the events. The *Miranda* warning, therefore, did not purge the taint of the illegal seizure of the Chatstep information and Riddick's statement should be suppressed.

**IV.**

The admissibility of a defendant's statement must be determined after a hearing. Title 18, United States Code, Section 3501(a) states:

> In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

Riddick asks that the Court conduct a hearing on the admissibility of his statement and on this and all other pretrial motions.

**V.**

The evidence seized from Riddick's home and the statement taken from Riddick are the result of an unlawful search. Riddick accordingly moves for their suppression.

Respectfully submitted by,

/s/ J. Blake Hendrix
J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

and

/s/ Annie Depper
Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com