IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) No. 4:17CR00145 BSM |
| | ) |
| EDGAR K. RIDDICK | ) |

## MOTION TO SUPPRESS EVIDENCE OBTAINED FROM ILLEGAL TRAFFIC STOP

The police can stop and detain anyone in the immediate vicinity when a search warrant is executed. In this case, Riddick was stopped and detained 14 miles away. Through his attorneys, J. Blake Hendrix and Annie Depper of Fuqua Campbell, P.A., Riddick moves to suppress all evidence obtained from, and that flowed from, the illegal stop.

**I.**

On February 22, 2017, Detective Amber Kalmer of the Little Rock Police Department applied for, and was granted, a search warrant for Riddick's home in Little Rock. It was executed the next morning. In preparation for executing the warrant, one of the team members, Detective Ray Koonce, conducted surveillance on Riddick's home, and around 6:50 a.m., saw Riddick get into his suburban and drive from the residence. While Koonce followed Riddick in his undercover vehicle, he requested the assistance of a marked unit in stopping the vehicle, not for any traffic violation, but to detain Riddick because of the execution of the search warrant. Koonce followed Riddick down Cantrell Road, onto La Harpe Boulevard, onto I-30, and onto I-440, continuing to follow until Riddick arrived at the Holiday Inn Express on Bankhead Road near the Clinton National Airport. As Riddick picked up a passenger, Koonce and a uniformed officer, Carlton, stopped and detained Riddick.

Koonce removed Riddick from his vehicle and patted him down. Riddick was placed in the back of Carlton's patrol unit, and Koonce questioned the passenger who said he was a fellow

1

engineer from Houston and he and Riddick were on their way to a job site in Stuttgart. Koonce claims, Riddick gave verbal consent to search the vehicle,[1] and Koonce seized a laptop, flash drive, and camera, along with Riddick's cellphone. Koonce advised Riddick that a search warrant was being executed on his home. When Riddick asked if he could call his wife, Koonce refused to allow Riddick to use his cellphone. When Riddick asked if he could drive his vehicle home, Koonce refused. Left with no choice, Riddick was driven to his home in the back of Carlton's squad car. At home, Riddick was escorted in, where Kalmer and Detective Jennifer Hurd questioned him for over two hours.

It is over 14 miles from Riddick's home to where he was stopped and detained.

## II.

### A.

*Michigan v. Summers*, 452 U.S. 692 (1981), established that the police can legitimately detain occupants of a residence who are within, or immediately outside, a residence at the moment police officers execute a search warrant. In *Bailey v. United States*, 568 U.S. 186 (2013), the court considered whether the Fourth Amendment justifies a detention beyond the immediate vicinity of the residence being searched. *Id*. at 194.

Police in *Bailey* obtained a warrant to search a residence for a firearm. As the search team began to prepare, two officers in an unmarked car conducted surveillance and saw the defendant and another man leave the residence and drive away. After following for about a mile, the officers stopped the vehicle, ordered both men out, and patted them down. They seized keys and obtained a statement from Bailey that connected him to the residence containing the weapon. Bailey moved to suppress the evidence, but the district court found that the stop was lawful

---

[1] Koonce didn't obtain a written consent from Riddick. Later, back at the residence, Detective Jennifer Hurd had Riddick execute a written consent to search his vehicle after the fact.

under *Summers* as a permissible detention incident to the execution of the search warrant. *Bailey*, 568 U.S. at 191.

Before the Supreme Court, Bailey argued that *Summers* restricted a person's detention incident to executing a search warrant to the immediate vicinity of the premises searched. Since the police waited until Bailey was almost a mile away, the detention, Bailey argued, was an unreasonable seizure under the Fourth Amendment. The Court agreed. *Summers*, the Court held, permitted the detention of occupants of a residence during the execution of a search in light of law enforcements' interests in conducting a safe and efficient search. *Bailey*, 586 U.S. at 200. The Court found that "[a] spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detentions incident to the execution of a search warrant." *Id*. at 201. Since Bailey was detained "at a point beyond any reasonable understanding of the immediate vicinity of the premises in question," the Court reversed and remanded. *Id*. at 201.

**B.**

Koonce watched Riddick leave his home in his suburban ten minutes before the police converged on Riddick's home to execute the search warrant. He followed Riddick going east on Cantrell Road, but did not stop him. He followed Riddick onto La Harpe Boulevard and the entrance ramp to I-30, but still waited. Koonce followed Riddick down I-30 to the entrance ramp to I-440, but still no stop. When Riddick arrived at the Holiday Inn Express by the airport, Koonce and a patrol officer, in separate vehicles, pulled in behind Riddick's vehicle. Koonce removed Riddick from the vehicle and placed him in the back of the patrol officer's squad car.

Mapquest.com tells us that the distance from Riddick's home to the Holiday Inn Express on Bankhead Drive is over 14 miles. The Supreme Court in *Bailey* found that one mile was too distant to be reasonable. Riddick was *14* miles from his home when detained. Riddick was not

therefore in the immediate vicinity of his home when it was searched and his detention, under *Bailey*, was unreasonable as a detention incident to the search.

All evidence obtained from the unlawful detention must be suppressed. This includes any evidence obtained from the vehicle -- the laptop, flash drive, and camera (assuming they yielded any incriminating information) – and Riddick's later statement at his home, as discussed later.

It would be surprising if, at a hearing, the police come up with some other *post hoc* justification for detaining Riddick at the Holiday Inn Express. Koonce's report does not state that he saw Riddick violate any traffic laws during the 14-mile drive that would justify a traffic stop. And, Koonce did not cite Riddick for any traffic offenses. Koonce told Riddick that a search warrant was being executed at his residence and asked him to accompany Koonce back to the residence. But Koonce left Riddick with no options: he wouldn't let Riddick drive his own vehicle and refused to let Riddick call his wife who could have come to pick him up. The sole purpose of stopping Riddick was to detain him incident to the execution of the search warrant.

**III.**

A consent is invalid if obtained during an illegal detention. See *Florida v. Royer*, 460 U.S. 491, 507 (1983) ("Because . . . Royer was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search.").

In *United States v. Alvarez-Manzo*, 570 F.3d 1070 (8th Cir. 2009), narcotics agents staked out the Greyhound Bus terminal in Omaha looking for anything suspicious. A bag in the cargo area of a bus caught the attention of one of the agents. He seized it, and, after identifying the owner, detained him. The agent then asked, and obtained, the suspect's consent to search his wallet. The consent, the government argued, purged the taint of the unlawful search and seizure.

But on appeal, the Eighth Circuit held that the search, despite the suspect's voluntary consent, was unlawful. Citing the Tenth Circuit's opinion in *United States v. Reeves*, 524 F.3d 1161 (10th Cir. 2008), the Court found that the government failed to prove that the causal connection between the illegal seizures and the consent was broken. *Id.* at 1077.

Riddick was unlawfully detained at the Holiday Inn Express. During the unlawful detention, Koonce says he obtained Riddick's verbal consent to search the vehicle. Nothing intervened between the unlawful detention and the consent. In fact, the consent was obtained *during* the illegal detention, making it impossible for anything to break the causal connection.

**IV.**

The attenuation doctrine, set out in *Brown v. Illinois*, 422 U.S. 590 (1975), provides that not all evidence obtained after an illegal search or seizure has to be suppressed. A break in the causal connection between the initial illegality and the later seizure of evidence can purge the taint.

In *Brown v. Illinois*, 422 U.S. 590 (1975), the government argued that there were three breaks in the chain of events from the officers' illegal entry into Brown's home and his subsequent confession: 1) a temporal break (two hours elapsed between the illegal search and the confession); 2) a spatial break (the illegal entry occurred at Brown's apartment, the confession at the stationhouse); and, 3) the giving of *Miranda* warnings. See *United States v. Yorgensen*, 845 F.3d 908 (8th Cir. 2017) (factors include the temporal proximity of the unconstitutional conduct and the statement, the presence of intervening circumstances, and the flagrancy of the violation).

There was no break in the chain of events leading from Riddick's illegal detention to this subsequent statement. Riddick left his home at 6:50 a.m. He drove 14 miles – about 20 to 30 minutes – and was detained. The *Miranda*-rights form was executed at 8:25 a.m. By whatever

approximation of the time-lapse between illegal detention and statement, it was less than two hours. Two hours, the Court found in *Brown*, was not sufficient to break the connection.

The spatial difference was not sufficient to break the chain of events leading to the statement. Riddick was detained at the hotel and interrogated in his home. But *Brown* found that an illegal entry at Brown's apartment and a later interrogation at the police station was not a significant spatial difference to break the chain.

The *Brown* Court also held that the giving of the *Miranda*-warnings, "*alone* and *per se* cannot always make the act sufficiently a product of free will to break . . . the causal connection between the illegality and the confession." *Id*. at 603. Riddick was read the *Miranda* form and executed a waiver. But so did Brown. The warnings, like the temporal and spatial differences, were not intervening circumstances sufficient to break the causal connection between Riddick's illegal detention and his statement.

**V.**

For these reasons, Riddick asks that the Court suppress all evidence derived from his illegal detention, including his statement.

Respectfully submitted by,

/s/ J. Blake Hendrix _____
J. Blake Hendrix
Arkansas Bar No. 86066
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)
bhendrix@fc-lawyers.com

and

/s/ Annie Depper_____
Annie Depper
Arkansas Bar No. 2009267
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7144 (direct dial)
adepper@fc-lawyers.com