UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  4:17CR00145 BSM |
| vs. | ) | |
| | ) | |
| EDGAR K. RIDDICK | ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPRESS EVIDENCE OBTAINED FROM TRAFFIC STOP

The United States Attorney for the Eastern District of Arkansas, Cody Hiland, by and through Kristin Bryant, Assistant United States Attorney, for its Response to Defendant's Motion to Suppress (Doc. No. 27), respectfully states:

### I.      STATEMENT OF FACTS

On February 22, 2017, LRPD Detective Amber Kalmer (Det. Kalmer) applied for, and obtained a state search warrant for the residence of the defendant, Edgar Riddick, located at 7 Greenbrier Road, Little Rock, Arkansas 72202.  The warrant was based on facts that an IP address that returned to the defendant's residence at 7 Greenbrier Road uploaded child pornography on multiple dates.  (Ex. 1).

The warrant was executed on February 23, 2017.  Prior to the execution of the warrant, LRPD Detective Raymond Koonce was conducting surveillance of the defendant's residence. Det. Koonce observed a tan 1991 Chevrolet Suburban being driven by the defendant come down the hill of Greenbrier Road and stop at the stop sign at Cantrell Road.  At this time, detectives were not planning on the defendant leaving his residence.  Det. Koonce followed the defendant to a Holiday Inn Express located at 3121 Bankhead Drive, Little Rock.

While the defendant was parked in his car at the entrance of the Holiday Inn Express, an individual later identified as Craig Koehn got in the passenger side of the defendant's car.  Det.

Koonce pulled his vehicle behind the defendant's, approached the vehicle while it was still running, identified himself, and asked the defendant to step out of the car.  There was not a car in front of the defendant's car and the defendant's vehicle was not blocked in.  Det. Koonce told the defendant that he was going to pat him down for officer safety.  Shortly thereafter, LRPD Officer Cheree Carlton arrived in a marked LRPD car.

Det. Koonce made contact with Mr. Koehn, who advised that he had flown in from Houston, Texas, and had business dealings with the defendant and they were headed to Stuttgart to investigate a fire that occurred there.

Det. Koonce then spoke with the defendant, who was still standing outside the entrance to the hotel, and advised the defendant that the only reason he followed him was because a search warrant was being executed at his residence.  Det. Koonce advised the defendant multiple times that he was not under arrest.  Det. Koonce asked the defendant to accompany him back to the residence.  The defendant responded that he would.  Det. Koonce asked for consent to search the defendant's vehicle and the defendant gave verbal consent.  Det. Koonce located a digital camera, flash drive, and laptop.  Det. Koonce told the defendant the items would be placed in the LRPD vehicle and transported back to the residence with the defendant.

The defendant asked Det. Koonce if he was under arrest and Det. Koonce responded, "no."  The defendant asked what the search warrant concerned and Det. Koonce told him that once he arrived back at the residence, he (the defendant) would be told.  The defendant then gave Mr. Koehn instructions on what to do in Stuttgart and released his vehicle to him (Koehn), so that Mr. Koehn could continue to Stuttgart for the arson investigation. The defendant was then driven to his residence in the marked LRPD police car and the evidence was turned over to LRPD Detectives Kalmer and Hurd.  At no time was the defendant ever handcuffed.  The

consensual encounter at the Holiday Inn Express lasted no longer than ten minutes.

At the residence, the defendant signed a consent to search form for the items in the car. (Ex. 2). The defendant was interviewed at 0825 hours on February 23, 2017. (Ex. 3, p. 001). He waived his Miranda rights and stated he understood he could stop the interview at any time. (Ex. 3, pp. 001-007). During the interview, the defendant stated that he freely came back to the residence and acknowledged that he was not under arrest. (Ex. 3, pp. 004). Det. Hurd told him that he was free to leave at any time and not under arrest. (Ex. 3, pp. 004). The defendant stated that he was there for his wife. (Ex. 3, pp. 004). The defendant further stated that he knew he could revoke consent at any time. (Ex. 3, p. 007).

## II.     ARGUMENT AND AUTHORITY

"The Eighth Circuit has described three categories of police encounters: '(1) consensual communications involving no coercion or restraint, (2) Terry stops—minimally intrusive seizures significant enough to invoke the Fourth Amendment and which must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.'" *United States v. Flores–Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007) (citing *United States v. Johnson*, 326 F.3d 1018, 1021 (8th Cir.2003). In this case, the encounter between Det. Koonce and the defendant was a consensual encounter that did not implicate the Fourth Amendment. In the alternative, Det. Koonce had reasonable suspicion to believe the defendant had committed a crime.

### A.     The Fourth Amendment is not implicated because the encounter between Det. Koonce and the defendant was consensual.

If an encounter is consensual, it is not a seizure because "the Fourth Amendment is not implicated, and the officer is not prohibited from asking questions" or seeking consent to search the vehicle. *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010).

Whether an encounter is consensual depends on the facts of the case. [*United States v. Jones,* 269 F.3d 919, 925 (8th Cir. 2001)]. "A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area." [*United States v. Flores,* 474 F.3d 1100, 1103 (8th Cir. 2007)]. A person is seized within the meaning of the Fourth Amendment when, under the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." *Jones,* 269 F.3d at 925. Circumstances of a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Flores,* 474 F.3d at 1103, *quoting United States v. White,* 81 F.3d 775, 779 (8th Cir. 1996); *see also United States v. Nunley,* 873 F.2d 182, 184-85 (8th Cir. 1989) (defendant was seized when officers' statements were more than routine questioning, and suggested to defendant that she was the particular focus of an investigation). Conversely, if a reasonable person feels free to "disregard the police and go about his business," the encounter is consensual. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), *quoting California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

*United States v. Munoz*, 590 F.3d at 921.  *See also United States v. Hathcock*, 103 F.3d 715, 718-19 (8th Cir. 1997) (finding a consensual encounter where officer approached defendant, showed him his badge, told him his name and informed him that he was with the Narcotics Unit of the Omaha Police and wanted to ask him a few questions).

The defendant relies on the Supreme Court's decision in *Bailey v. United States*, 568 U.S. 186 (2013) for his proposition that he was detained.  "In *Bailey*, interpreting and applying *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court held that, once an individual has left the immediate vicinity of a premises that is being searched or is about to be searched pursuant to a search warrant, his involuntary detention must be justified by some rationale other than that it is incident to execution of the warrant."  *United States v. Rhodes*, 730 F.3d 727, 731 (8th Cir. 2013).    In *Bailey*, the defendant and another individual were handcuffed and told "they were being detained incident to the execution of a search warrant."

*Bailey*, 452 U.S. at 191.  Bailey responded, "I don't live there. Anything you find there ain't mine, and I'm not cooperating with your investigation."  *Id.*

In this case, the encounter between the defendant and Detective Koonce was consensual and did not implicate the Fourth Amendment.  First, unlike the defendant's assertions in his motion to suppress, there was no traffic stop.  A marked LRPD unit never pulled the defendant's vehicle over and only arrived after Det. Koonce made contact with the defendant in the parking lot.

During the ten-minute encounter, Det. Koonce never made any show of force, displayed a weapon, or used language or a tone of voice indicating that compliance was required.  There were only two officers on the scene.  The defendant was told on multiple occasions that he was not under arrest and he was never handcuffed, unlike the defendant in *Bailey*.  The defendant was asked if he would provide consent to search his car.  He later memorialized this consent at his residence via a written form.  The defendant was <u>asked</u> if he would accompany Det. Koonce to the residence, to which the defendant responded that he would. The defendant allowed his co-worker to take his vehicle so that the co-worker could continue with the planned business trip that day. The defendant does not allege that his phone was seized.  Certainly, if the defendant's assertion that he was not permitted to contact his wife to come pick him up are to be believed, the defendant could have asked his co-worker to take him home.  There is nothing about the encounter between Det. Koonce and the defendant that would have made a reasonable person believe they were not free to leave.

> **B.      Law enforcement could have lawfully conducted an investigative stop because there was reasonable suspicion that the defendant committed a crime.**

If this Court finds that the encounter between Det. Koonce and the defendant was not consensual, Det. Koonce could have lawfully conducted an investigative stop based on reasonable suspicion that the defendant had committed a crime.

Seizures fall into two categories - investigative stops and arrests - and there is no bright line of demarcation between the two. *United States v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992). Under the Fourth Amendment, an investigative stop must only be supported by reasonable, articulable suspicion that criminal activity is afoot, whereas an arrest must be supported by probable cause." *Id.* at 956 (citing *Terry v. Ohio*, 392 U.S. 1, 25–30 (1968)). Stated another way, an investigative stop is constitutionally permissible if the officer has a reasonable suspicion, based on articulable facts, that criminal behavior is afoot. *United States v. Dixon*, 51 F.3d 1376, 1381 (8th Cir. 1995) (citing *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994)); *see also United States v. Bullock*, 632 F.3d 1004, 1014–15 (7th Cir.2011) (holding a *Terry* investigative stop is a brief detention that gives officers a chance to verify well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity). In determining whether the investigative stop was justified by reasonable suspicion, a court must consider the totality of the circumstances surrounding the stop in light of the officer's experience. *Id.*

During a *Terry* stop, officers may check for weapons and may take any additional steps "reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop." *Miller*, 974 F.2d at 957. An investigative stop must be temporary and must last no longer than is necessary to effectuate the purpose of the stop." *Dixon*, 51 F.3d at 1380.

In this case, at a minimum, Det. Koonce had reasonable suspicion that the defendant had engaged in criminal activity, specifically possession and distribution of child pornography. As set forth in the search warrant, all of the Cybertips returned to an IP address registered to the defendant at his residence. Detectives observed the defendant unexpectedly leave his residence, and Det. Koonce followed him. Det. Koonce approached the defendant's vehicle, lawfully

patted him down for officer safety, and explained to him that they were executing a search warrant at his house.   Det. Koonce then asked the defendant for consent to search the vehicle and asked the defendant if he wished to accompany him back to the residence where the search warrant was being executed.  All of this took less than ten minutes.  Even if the Court finds the encounter was consensual, the encounter was lawful as an investigative stop under *Terry v. Ohio*.

> ### C.      The defendant voluntarily consented to the search.

As established above, the defendant was not unlawfully detained at the Holiday Inn Express.  Furthermore, his consent to search was voluntary.  "A consent is voluntary if the consenting individual had a 'reasonable appreciation of the nature and significance of his actions.'"  *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007) (citations omitted). "Consent can be given orally or in writing, and it is not necessary to use a written consent form." *Id*. at 1136-37.  "The government must prove by a preponderance of the evidence that the consent was voluntary."  *Id*. at 1137.

"To determine whether consent was given voluntarily, we examine the totality of the circumstances."  *United States v. Johnson*, 619 F.3d 910, 918 (8th Cir. 2010).  The Court considers (1) the defendant's age; (2) his general intelligence and education; (3) whether he was intoxicated at the time; (4) whether he was informed of his *Miranda* rights before consenting; (5) whether any previous arrests would have informed him of his rights and protections; (6) the length of time he was detained; (7) whether the officers acted in a threatening manner; (8) whether the police made any promises or misrepresentations; (9) whether the police had the defendant in custody or under arrest at the time; (10) whether he consented in public; and (11) whether the defendant was silent during the search. *Id*. at 918.

In this case, the defendant is a 56-year-old educated man.  According to his business website, Riddick Engineering Corporation, the defendant is the CEO "with decades of experience in investigations, design, construction, compliance, and multi-discipline investigations," and "he brings a wealth of problem solving tools to any design or investigation." (Ex. 4).  There is no evidence that he was intoxicated at the time he gave consent.  The defendant was not *Mirandized* at the Holiday Inn Express because he was told multiple times he was not under arrest.  The defendant does not have any previous arrests.  While the defendant was never detained, the encounter with Det. Koonce took no more than ten minutes.   The defendant was not in custody or under arrest.  The defendant provided consent to search his vehicle in the parking lot of the Holiday Inn Express, and when he asked where officers were going to take the items seized from the vehicle, he was told they would be going back to the residence.  He later signed a written consent to search form, and acknowledged post-*Miranda* that he could revoke his consent at any time.  The consent to search was voluntary.

> **D.     Application of the exclusionary rule is not appropriate under the attenuation doctrine.**

Even if the Court finds the defendant was illegally detained, suppression is not warranted under the attenuation doctrine.  The attenuation doctrine is an established exception to the exclusionary rule.  *United States v. Dickson*, 64 F.3d 409, 410 (8th Cir. 1995). The Eighth Circuit has held that some intervening voluntary acts on the part of a defendant, such as consenting to a search, may be sufficient to purge the taint of an illegality.  *See, e.g., id.* at 410-11; *United States v. Ramos*, 42 F.3d 1160, 1163-64 (8th Cir. 1994) (overruled on other grounds). The factors to be considered in determining whether the taint is purged are: "(1) the temporal proximity between the illegal search or seizure and the consent; (2) the presence of intervening

circumstances; and (3) the purpose and flagrancy of the official misconduct." *United States v. Becker*, 333 F.3d 858, 862 (8th Cir. 2003).

### 1.        Vehicle Search

The Eighth Circuit "has found consent given a short time after the stop [was] sufficient to purge the taint if other circumstances indicate the consent was sufficiently an act of free will." *United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007) (citing *United States v. Herrera– Gonzalez,* 474 F.3d 1105, 1112 (8th Cir.2007); *United States v. Palacios–Suarez,* 149 F.3d 770, 772 (8th Cir.1998) (holding that consent was sufficiently an act of free will to purge the taint of the initial stop where the officer asked the defendant several times if he could search the vehicle nine minutes after the initial stop); *Ramos,* 42 F.3d at 1164 (finding consent sufficient to purge the taint where the arrest and consent were "close in time")). As set forth above, the defendant voluntarily consented to a search of his vehicle.  At his residence, the defendant provided written consent to search the items.  (Ex. 2).  *See Ramos*, 42 F.3d at 1163-64 (holding that the defendant's voluntarily signing the consent form was sufficiently an act of free will to purge the taint of the preceding illegal detention and finding the evidence discovered by the consented-to search was admissible).  He even confirmed during his interview, post-*Miranda*, that he could revoke his consent.

The defendant asserts in his Motion that he was stopped 20 to 30 minutes from his residence.  (Doc. No. 27).  Under Eighth Circuit precedent, fifteen minutes is sufficient to demonstrate an attenuation of any illegality.  *United States v. Whisenton*, 765 F.3d 938, 942 (8th Cir. 2014).  *See also United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1112 (8th Cir. 2007) (finding that while ten minutes does not in itself suggest sufficient attenuation to purge the taint of the stop, neither does it compel the conclusion that the attenuation was insufficient).

Here, law enforcement did not act in bad faith. *Herrera-Gonzalez*, 474 F.3d at 1113 n.5 (noting that the Eighth Circuit has found consent sufficient to purge a taint even in the absence of intervening circumstances where the circumstances suggest that the officer was not trying to exploit an illegal situation and his conduct was in good faith) (citing cases). It is clear that law enforcement was not attempting to exploit an illegal situation and believed that they acted in accordance with the law.

### 2.   Post-*Miranda* Statement

As discussed above, the defendant was never detained, and even if the Court determines he was detained, such detention was lawful.  Nevertheless, if the Court determines that the defendant was illegally detained, the defendant's statement was attenuated from any illegal detention.

The defendant cites *Brown v. Illinois*, for his proposition that the defendant's post-*Miranda* interview was the product of an illegal detention.  "In *Brown*, the Court held that, to determine whether the causal connection between incriminating statements and an arrest or search that violated the Fourth Amendment has been broken, Miranda warnings—which protect Fifth Amendment rights—are relevant but other factors must be considered—the 'temporal proximity' of the unconstitutional conduct and the statements, the 'presence of intervening circumstances,' and 'particularly, the purpose and flagrancy of the official misconduct.'" *United States v. Yorgensen*, 845 F.3d 908, 914 (8th Cir.), cert. denied, 138 S. Ct. 89, 199 L. Ed. 2d 57 (2017).  "Providing *Miranda* warnings is an 'important, although not dispositive,' factor that weighs against suppression . . ." *Id*.  "Persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality." *Id*.

As to the temporal proximity factor, as discussed above, the Eighth Circuit has found that 15 minutes was sufficient to demonstrate an attenuation of any illegality. *Whisenton*, 765 F.3d at 942. The defendant had time to contemplate his situation. *United States v. Reisselman*, 646 F.3d 1072, 1081 (8th Cir. 2011) (upholding the district court's denial of a motion to suppress statements under the attenuation doctrine where defendant post-*Miranda* voluntarily provided incriminating statements fifteen to twenty minutes after an unlawful search of his person). As to the presence of intervening circumstances, the defendant voluntarily consented to a search of his vehicle and was advised of his *Miranda* rights prior to his interview at his residence. The defendant, by his own choice, chose to return to his residence. He was transported from the Holiday Inn Express in an LRPD car because he chose to release his vehicle to his co-worker so that co-worker could attend a business meeting. When the defendant returned to the residence, he spoke with Detectives Kalmer and Hurd. The defendant was read his *Miranda* warnings and told that he could stop the interview at any time. The defendant also confirmed that he freely came back to the house and was told at the Holiday Inn, as well as his residence, that he was not under arrest. Based on these facts, it is clear there was no flagrant official misconduct and that the defendant's waiver of his *Miranda* warnings was not the product of any illegal detention.

Finally, even if the Court finds a Fourth Amendment violation, application of the exclusionary rule would not result in appreciable deterrence.

> "[T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Arizona v. Evans,* 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Rather, exclusion of evidence is "a judicially created rule ... 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *Herring,* 129 S.Ct. at 699 (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). "Indeed, exclusion has always been our last resort, not our first impulse, and [Supreme Court] precedents establish important principles that constrain application of the exclusionary rule." *Id.* at 700 (internal citations and quotation marks omitted).

11

As a judicially-created remedy, the exclusionary rule applies only where "its remedial objectives are thought most efficaciously served." *Evans,* 514 U.S. at 11, 115 S.Ct. 1185. The exclusionary rule is not an individual right, but it "applies only where it 'results in *appreciable deterrence.*' " *Herring,* 129 S.Ct. at 700 (quoting *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)) (emphasis added) (some internal marks omitted); *see also Penn. Bd. of Probation & Parole v. Scott,* 524 U.S. 357, 368, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) ("We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence."). The Court also balances the benefits of deterrence against the costs of excluding the evidence, particularly the social costs of "letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.' " *Herring,* 129 S.Ct. at 701 (quoting *Leon,* 468 U.S. at 908, 104 S.Ct. 3405). Finally, the Supreme Court includes "an assessment of the flagrancy of the police misconduct" in its calculus of whether the exclusionary rule should be applied. *Id.* (internal marks omitted).

*United States v. Hamilton*, 591 F.3d 1017, 1027–28 (8th Cir. 2010).

The law enforcement officers involved in this investigation had no reason to believe that they acted in violation of the Fourth Amendment. They acted in good faith. Suppression would undermine the truth-seeking function of the judicial system. Therefore, the motion should be denied.

## III.   CONCLUSION

As discussed above, the encounter between Det. Koonce and the defendant was consensual,and alternatively, law enforcement had reasonable suspicion. The defendant voluntarily consented to the search of his vehicle and voluntarily made statements post-*Miranda*. Suppression is not appropriate under the attenuation doctrine, and under these circumstances, suppression would not further the stated purpose of the exclusionary rule.

WHEREFORE, the United States respectfully requests that the defendant's Motion to Suppress be denied.

Respectfully submitted,

Cody Hiland
United States Attorney


*/s/ Kristin Bryant*
By: KRISTIN BRYANT
Assistant United States Attorney
Bar No. 2009156
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Kristin.Bryant@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2018, I filed the foregoing with the Clerk of the Court and provided a copy to defense counsel.

*/s/ Kristin Bryant*
KRISTIN BRYANT